UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| RODNEY DAVIS, | ) | | |
| | ) | | |
| Petitioner, | ) | | |
| | ) | | |
| v. | ) | Nos. | 1:12-CV-329-CLC |
| | ) | | 1:02-CR-151-CLC-WBC |
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Respondent. | ) | | |

**<u>MEMORANDUM OPINION</u>**

Before the Court is Petitioner's *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Doc. 335]. The Government filed its response [Doc. 342], and Petitioner filed a reply [Doc. 346]. For the reasons stated below, the Court will **DISMISS WITH PREJUDICE** Petitioner's § 2255 motion [Doc. 335].

**I.    BACKGROUND**

Petitioner and ten co-defendants were charged in September 2002 with conspiring to distribute five kilograms or more of a mixture and substance containing cocaine hydrochloride and fifty grams or more of a mixture and substance containing cocaine base, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A) (Count One) [Doc. 2]. Petitioner was also charged with distributing at least fifty grams of a mixture and substance containing cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) (Count Five), and using a telephone to facilitate a conspiracy to distribute cocaine, in violation of 21 U.S.C. § 843(b) (Counts Six and Seven) [*Id.*].

On August 10, 2007, Petitioner signed a plea agreement with the United States in which he agreed to plead guilty to the drug conspiracy charged in Count One in exchange for dismissal of the other counts [Doc. 244 ¶ 1]. He stipulated to the following elements: (1) two or more

persons agreed to commit the crime of distribution of powder and crack cocaine; (2) Petitioner knowingly participated in that conspiracy; and (3) the conspiracy involved distribution of at least fifty kilograms of powder cocaine and five grams of crack cocaine [*Id.* ¶ 3]. He also stipulated to sufficient facts to satisfy those elements [*Id.* ¶ 4]. After acknowledging his "two prior drug felony convictions" triggered a mandatory term of imprisonment "for not less than life" under 21 U.S.C. § 841(b)(1)(A) [*Id.* ¶¶ 1(c), 4], Petitioner agreed to cooperate with law enforcement authorities [*Id.* ¶ 6]. In return, the United States promised to "bring to the Court's attention the nature, extent, and value of [Petitioner's] cooperation" at sentencing [*Id.* ¶¶ 6–8].

While the prosecutor inadvertently failed to file the requisite notice of intent to seek life imprisonment pursuant to 21 U.S.C. § 851, filing such notice for the first time during a brief recess in the change-of-plea proceeding [Doc. 283 pp. 4–5; Doc. 242], neither Petitioner nor counsel objected to the oversight [Doc. 283 p. 5]. In fact, after informing the Court that he had been "making sure [Petitioner] understood the enhancement notice" [*Id.* at 6], counsel assured the Court that he and Petitioner did not need additional time to confer on the issue [*Id.*]. During the plea colloquy, Petitioner stated under oath that he had discussed the case with his attorney, was satisfied with his attorney's representation, understood the legal rights he was giving up by pleading guilty, and was pleading guilty voluntarily [*Id.* at 2–4].

Confirming the written plea agreement represented the entire agreement between the parties [*Id.* at 6–7], Petitioner assured the Court that no "officer or agent of the government [had] promised or suggested that [Petitioner would] receive a lighter sentence" by pleading guilty [*Id.* at 8–9]. Further, he claimed he was pleading guilty because he was, in fact, guilty [*Id.* at 14]. After hearing the Court restate the elements of the charged offense and statutorily mandated term of life imprisonment, Petitioner explained that he "still wish[ed] to plead guilty" [*Id.* at 9–10].

2

Informing Petitioner his advisory guidelines range could not be calculated before promulgation of the PSR, the Court expressly noted his prior convictions might increase the ultimate sentence [*Id.* at 11–13]. Petitioner confirmed he had spoken with his attorney about both the sentencing guidelines and his possible sentences [*Id.* at 11–13]. Hearing all of the above, the Court accepted Petitioner's plea as both knowing and voluntary [*Id.* at 14].

The probation officer assigned a base offense level of thirty-eight pursuant to the 2006 version of the United States Sentencing Guidelines, deeming Petitioner responsible for five kilograms of cocaine and one-and-a-half kilograms of crack cocaine [PSR ¶¶ 29, 20].[1] A three-level reduction for acceptance of responsibility resulted in a total offense level of thirty-five [*Id.* ¶¶ 37, 38]. Petitioner was assigned a total of four criminal history points, yielding a criminal history category of III; this category was elevated to VI, however, due to Petitioner's status as a career offender [*Id.* ¶¶ 36, 45]. The probation officer ultimately concluded the resulting 292-to-365 month advisory range was superseded by 21 U.S.C. § 841(b)(1)(A)'s mandatory minimum term of life imprisonment due to Petitioner's two prior felony drug offenses [*Id.* ¶¶ 56–58].

At the sentencing hearing itself, Counsel informed the Court that Petitioner had "worked hard" with law enforcement authorities in an attempt to render substantial assistance that would merit a downward departure, but had not yet been able to do so [Doc. 282 p. 5]. Finding the PSR accurately reflected the relevant facts and correctly stated the applicable Guidelines range [*Id.* at 4], the Court sentenced Petitioner to a statutorily-mandated term of life imprisonment on January

---

[1] Despite objecting to the drug quantity in the PSR by arguing he should only have been responsible for the quantity to which he stipulated when pleading guilty [PSR Addendum p. 2], Petitioner acknowledged the concern had no effect on 21 U.S.C. § 841(b)(1)(A)'s "mandatory life sentence" [Doc. 282 p. 3]. The Court declined to resolve the objection on that basis [*Id.*].

10, 2008 [Docs. 253, 255], saying "[it] ha[d] no discretion and no authority to impose any [sentence] other than what the Congress of the United States ha[d] mandated" [Doc. 282 p. 6].

Petitioner filed a notice of appeal on January 31, 2008 [Docs. 254, 286], arguing the "plea colloquy was so misleading" that "he was unaware . . . pleading guilty would mean spending his entire life in prison." *United States v. Davis*, 422 F. App'x 445, 446 (6th Cir. 2011). Specifically, he claimed (1) the Court erred by not personally informing him of the mandatory life sentence and (2) "injection of irrelevant and misleading information regarding his sentence [*e.g.*, the Court's comments about the Guidelines range not yet having been calculated and the possibility of a term of supervised release] rendered his plea invalid." *Id.* at 448. The Sixth Circuit rejected both claims, finding Petitioner was adequately informed of the statutory mandatory minimum under 21 U.S.C. 841(b)(1)(A) prior to entering his guilty plea and "made a strategic gamble with his plea" in an attempt to earn a lesser sentence despite the overwhelming evidence of his guilt. *Id.* at 450. The United States Supreme Court denied Petitioner's writ of certiorari on October 5, 2011 [Doc. 325], and he filed the current timely petition pursuant to § 2255 on October 3, 2012 [Doc. 335].

## II.  STANDARD OF REVIEW AND ANALYSIS

To obtain relief under 28 U.S.C. § 2255, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete

4

miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

The petition asserts three grounds of collateral attack: (1) multiple theories of ineffective assistance of counsel during the plea and sentencing process; (2) entry of an involuntary and unknowing plea; and (3) retroactive relief from the Fair Sentencing Act of 2011 [Doc. 335].

**A.     Ground One: Ineffective Assistance of Counsel Claims**

A petitioner alleging ineffective assistance must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987). First, the petitioner must establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *id.*, as measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Counsel's assistance is presumed to have been effective, and the petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003); *see also Strickland*, 466 U.S. at 689 (a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound . . . strategy" (internal citation omitted)).

Second, the petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). If a petitioner fails to prove that he sustained prejudice, the Court need not decide whether counsel's performance was deficient. *See United States v. Hynes*, 467 F.3d 951, 970 (6th Cir. 2006) (holding that alleged "flaws" in trial

counsel's representation did not warrant a new trial where the claims, even if true, did not demonstrate that the jury would have reached a different conclusion).

Petitioner asserts seven separate theories of ineffective assistance, including allegations that trial counsel: (1) pressured him into entering a guilty plea without fully apprising him of the level of "cooperation" required to obtain a government motion for downward departure [Doc. 135-1 pp. 6–7 (arguing "counsel should have, but did not, explain the requirements of 'cooperation'")]; (2) failed to conduct a thorough investigation regarding his ability to provide useful information to the Government before advising that he accept the plea offer [*Id.* at 7–8 (arguing counsel failed to conduct any investigation into his case and, as a result, failed to inform Petitioner that he lacked useful information for purposes of "cooperation")]; (3) failed to advise him about the mandatory statutory penalties under 21 U.S.C. § 841(b)(1)(A) or fact that such provision would obviate application of the sentencing guidelines [*Id.* at 8–9 (arguing he should have been informed (a) the federal sentencing guidelines would not apply to his case because of 21 U.S.C. § 841(b)(1)(A) and (b) that same provision required a life sentence absent a government motion for departure)]; (4) failed to assist him with the cooperation process and ensure he received a motion for downward departure [*Id.* at 9–10]; (5) failed to object to alleged misstatements in the plea colloquy regarding applicability of sentencing guidelines [*Id.* at 10–11 (arguing plea colloquy made repeated and misleading references to (a) inability of sentence determination prior to PSR, (b) applicability of sentencing guidelines, and (c) possibility of supervised release)]; (6) failed to advise him of the elements of the charges against him or defenses available [*Id.* at 11–12]; (7) failed to move to withdraw guilty plea when it became obvious Petitioner was not going to obtain a motion for downward departure [*Id.* at 12–13 (arguing counsel should have attempted to withdraw the plea after the government made clear it

6

would not seek a downward departure)]; and (8) failed to seek variance based on fact that he made good faith attempt to cooperate with the government [*Id.* at 13]. All eight of the foregoing theories fail for one of three reasons.

### 1. Contradiction of Sworn Statements in Open Court

Petitioner's first theory—counsel pressured him into entering an unknowing plea with misadvice regarding the sentence he would ultimately obtain—fails because it constitutes a bald assertion in contravention of his sworn statements in open court.

While "no procedural device for the taking of guilty pleas is so perfect in design and exercise as to warrant a *per se* rule rendering it 'uniformly invulnerable to subsequent challenge,'" *Blackledge v. Allison*, 431 U.S. 63, 73 (1977) (quoting *Fontaine v. United States*, 411 U.S. 213, 215 (1973)), "representations of the [petitioner], his lawyer, and the prosecutor at [the original plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceeding," *id.* at 74. Thus, it is said that "[s]olemn declarations in open court carry a strong presumption of verity," *id.*, and justify summary dismissal of any challenge based on conclusory assertions or contentions incredible on the face of the record, *id.*

Nothing in the written plea agreement guaranteed the government would file a motion or downward departure [Doc. 244] and Petitioner confirmed that document contained his full understanding of the case [283 pp. 6–7]. In addition, Petitioner assured the Court that he had discussed his case with counsel and was satisfied with his representation [Doc. 283 p. 3]. After disclaiming any promise of a specific sentence from the government and acknowledging the Court was not bound by sentencing predictions of counsel, Petitioner confirmed that he understood the full range of possible penalties—including 21 U.S.C. § 841(b)(1)(A)'s mandatory

7

sentence of life imprisonment—and nonetheless wanted to plead guilty [*Id.* at 6–10]. Finally, Petitioner assured the Court that he was pleading guilty because he was in fact guilty [*Id.* at 14].

The Court finds Petitioner's contradicting assertions are insufficient to overcome the presumed veracity of his solemn statements during the Rule 11 colloquy. *Compare Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) (finding the defendant was bound by statements he made in response to the court's plea colloquy), *and Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (finding the petitioner bound to plea colloquy responses despite some evidence that contradicted statements made therein), *with Blackledge*, 431 U.S. at 74 (finding summary dismissal inappropriate where the petitioner provided specific detailed terms of the alleged broken promise; when, where, and by whom such promise was made; and the identity of a witness to that conversation). Because he cannot demonstrate the alleged misadvice caused him to plead guilty, Petitioner cannot establish he incurred prejudice as a result of counsel's allegedly deficient assistance during the plea negotiation process. *See United States v. Hicks*, 4 F.3d 1358, 1363 n.3 (6th Cir. 1993) ("[I]t is well settled that a defense attorney's erroneous calculation and prediction of the sentencing guidelines is not a basis for setting aside a guilty plea.").

### 2. Inability to Establish Prejudice Incurred

Petitioner's second, third, fifth, and sixth theories—failure to advise Petitioner about the mandatory statutory sentence, determine whether Petitioner possessed information sufficient to acquire a motion for downward departure, preview elements of the charged offense, or object to misleading statements during the Rule 11 colloquy—fail for lack of prejudice.

Petitioner acknowledged in the plea agreement that Count One was punishable by "imprisonment for a term of not less than life; a fine up to $8 million; supervised release for at least (10) years and up to life; any lawful restitution; and a $100 special assessment" [Doc. 244 ¶

8

1(c)]. He also acknowledged that the "Court may impose any lawful term of imprisonment up to [this] statutory maximum" [*Id.* ¶ 3]. The full scope of his potential incarceration was highlighted again during the plea colloquy [Doc. 283 pp. 9–10 (describing "maximum penalty" faced as the statutorily mandated "term of life imprisonment")].

In addition to the foregoing, the written plea agreement set forth the elements of Count One [Doc. 244 ¶¶ 3(a)–(c)]. Petitioner assured the Court he "discussed" this information, in addition to any possible defenses, with counsel [*Id.* at 3], confirming he "understood the crime charged" [*Id.*]. The Court reiterated the elements of the charged offense during Petitioner's plea colloquy [Doc. 283 p. 9], after which he again confirmed that he understood the elements and nature of the crime to which he was pleading [*Id.*].

Because the Court finds he was adequately informed about the potential application of 21 U.S.C. 841(b)(1)(A) and the elements of the charged offense in both his written agreement and Rule 11 colloquy, Petitioner cannot demonstrate that he incurred any prejudice as a result of counsel's alleged failure to brief him on those issues. Similarly, Petitioner's disclaimer of reliance on sentencing predictions and recognition of the full scope of potential penalties [*Id.* at 6–10, 14] prevent him from claiming counsel's alleged failure to investigate whether he possessed sufficient information to obtain a section 5K1.1 motion for downward departure resulted in prejudice. Finally, for reasons discussed in subsequent sections, the Court rejects any argument that its colloquy was constitutionally deficient. As a result, Petitioner cannot show that he was prejudiced by counsel's failure to mount an objection on that basis.

### 3. Failure to Demonstrate Deviation from Professional Norms

Petitioner's fourth, seventh, and eight theories—failure to ensure receipt of a motion for downward departure, withdraw the guilty plea based on the absent such motion, or seek variance based on Petitioner's good faith effort at cooperation—fail because counsel was not ineffective.

While it is true that Petitioner expressly agreed to "cooperate completely and truthfully with any and all law enforcement agents[,]" he did so in exchange for a guarantee that the United States would "bring to the Court's attention the nature, extent, and value of [his] cooperation [actually provided]" [Doc. 244 ¶¶ 6, 8]. Such guarantee is significantly different from a promise that the government would file a section 5K1.1 motion for downward departure [*Id.* ¶ 14 (assuring the Court this "agreement constituted the full . . . understanding between the parties")]. Absent such guarantee, the decision whether to file a motion for downward departure based on substantial assistance remains solely with the government, which has the "[p]ower, [but] not a duty, to file a substantial-assistance motion." *Wade v. United States*, 504 U.S. 181, 185 (1992); *see also United States v. Truman*, 304 F.3d 586, 591 (6th Cir. 2002) (recognizing the government's "exclusive gate-keeping authority over the triggering mechanism of [section] 5K1.1"). As a result, the Court finds Petitioner cannot show counsel deviated from professional norms by failing to (1) force the government to undertake a discretionary action, (2) mount an objection to the validity of the plea based on the absence of such discretionary conduct, or (3) move for a variance that the Court lacked discretion to grant. *See* 21 U.S.C. § 841(b)(1)(A) (providing the Court "shall" sentence defendant with two or more prior drug-related felony convictions "to a mandatory term of life imprisonment without release"); *see also Brady v. United States*, 397 U.S. 742, 757 (1970) ("A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus

10

misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action.").

### B. Ground Two: Entry of an Involuntary and Unknowing Plea

In addition to the foregoing ground, Petitioner appears to argue several of the aforementioned deficiencies resulted in entry of an unknowing and involuntary plea [Doc. 335 p. 5]. The claim fails for many of the reasons discussed above.

Petitioner was advised of the applicable maximum statutory penalties [Doc. 244 ¶ 1(c); Doc. 283 pp. 9–10], Fed. R. Crim. P. 11(b)(1)(H); Fed. R. Crim. P. 11(b)(1)(N), the Court's obligation to calculate his applicable sentence through use of the sentencing guidelines [Doc. 244 ¶ 11; Doc. 283 pp. 11–13], Fed. R. Crim. P. 11(b)(1)(M), the nature and elements of each charge to which he was pleading [Doc. 244 ¶ 3(a)–(c); Doc. 283 p. 9], Fed. R. Crim. P. 11(b)(1)(G), and the various constitutional rights which he was waiving by entry of the plea [Doc. 244 ¶¶ 5(a)–(g); Doc. 283 pp. 3–4], Fed. R. Crim. P. 11(b)(1)(A)–(F). Petitioner assured the Court that no one had threatened or forced him to plead guilty [Doc. 283 pp. 4, 6] and that no one from the government had promised or suggested that he would receive a specific sentence [*Id.* at 8], confirming he still wanted to plead guilty [*Id.* at 14] despite not being permitted to withdraw his plea on the basis of the sentence received [*Id.* at 13].

Observing the foregoing exchange, the Court found Petitioner to be in full possession of his faculties, competent to plead guilty, and that the guilty plea entered was both knowing and voluntary [*Id.* at 14]. The Court found a factual basis for his guilty plea had been established and Petitioner understood both the nature and elements of the offenses to which he was pleading as well as the maximum penalties for such offenses [*Id.*]. On this basis, the Court accepted Petitioner's plea of guilty to Count One of the indictment [*Id.*].

11

"[R]epresentations of the defendant, his lawyer, and the prosecutor at [the original plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceeding." *Blackledge*, 431 U.S. at 74 (quoting *Fontaine*, 411 U.S. at 215). Where, as here, the court has scrupulously followed the required Rule 11 procedure, "the defendant is bound by his statements." *Baker*, 781 F.2d at 90.[2] None of Petitioner's alleged deficiencies overcome the presumed veracity of his solemn statements in open court, *see Ramos*, 170 F.3d at 566 (holding that defendant was bond by sworn statements during the plea colloquy, even if some evidence exists to contradict those admissions), and the "integration clause" [Doc. 244 ¶ 14] defeats any suggestion he entered the plea in reliance upon oral promises outside the written agreement, *United States v. Quesada*, 607 F.3d 1128, 1132 (6th Cir. 2010) (quoting *United States v. Hunt*, 205 F.3d 931, 935 (6th Cir. 2000)).

### C. Ground Three: Entitlement to Relief Under the Fair Sentencing Act of 2011

Without elaboration or discussion, Petitioner suggests that his sentence should be reduced based on subsequent enactment of the Fair Sentencing Act in 2011 [Doc. 335 p. 7]. It is well established that the Act itself is not retroactively applicable to criminal defendants sentenced before its enactment. *See United States v. Carradine*, 621 F.3d 575, 580 (6th Cir. 2010) ("[W]e must apply the penalty provision in place at the time [defendant] committed the crime in

---

[2] To the extent Petitioner attempts to challenge the adequacy of his plea colloquy under Rule 11, the Court notes that he raised the same issue with the Sixth Circuit on direct appeal. *See Davis*, 422 F. App'x at 448–50 (arguing colloquy was insufficient to satisfy Rule 11(b)(1)(N)'s requirement the Court ensure the defendant understood the mandatory minimum sentence faced and references to sentencing guidelines were so misleading that the defendant could not have understood the mandatory nature of the penalty). The Sixth Circuit rejected both arguments. *Id.* It is well established that absent exceptional circumstances, such as an intervening change of law, a § 2255 motion cannot be used to relitigate issues decided on appeal. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *DuPont v. United States*, 76 F.3d 108, 110–11 (6th Cir. 1996). Because Petitioner has failed to identify any such exceptional circumstance in the current case, the Court finds that it lacks authority to review the claim.

question."), a*brogated on other grounds by Dorsey v. United States*, 132 S.Ct. 2321, 2331 (2012) (finding Act is retroactively applicable where conviction occurred before, but sentencing occurred after, enactment). Thus, Petitioner—sentenced in 2008, several years before the Act's enactment—remains subject to the statutory penalty in place at that time, life imprisonment. This same order of events prevents Petitioner from arguing counsel's failure to seek a variance amounted to constitutionally deficient representation. *See e.g., Thompson v. Warden*, 598 F.3d 281, 288 (6th Cir. 2010) ("[F]ailure to perceive or anticipate a change in the law . . . generally cannot be considered ineffective assistance of counsel."); *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994) ("[R]easonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop.").

## IV. CONCLUSION

For the reasons discussed above, Petitioner's § 2255 petition [Doc. 335] will be **DISMISSED WITH PREJUDICE.** The Court will **CERTIFY** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** Petitioner leave to proceed *in forma pauperis* on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Fed. R. App. P. 22(b).

**AN APPROPRIATE ORDER SHALL ENTER.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

13